United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CONSTANCIA N. LOPEZ,

    Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.
_____/

No. C 07-2649 PJH

**ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Constancia N. Lopez ("Lopez") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her claim for disability benefits pursuant to 42 U.S.C. § 405(g). This action is before the court on the parties' cross-motions for summary judgment and Lopez's alterative motion for remand. Having read the parties' papers and administrative record and having carefully considered their arguments and relevant legal authority, the court GRANTS in part and DENIES in part both parties' motions, and REMANDS this case to the ALJ for further proceedings consistent with the court's order.

## BACKGROUND

**I.   Procedural History**

Lopez applied for disability and disability insurance benefits on April 2, 2003, alleging disability beginning on February 25, 2002. A.T. 12. Lopez's claim was denied both initially on August 12, 2003, and upon reconsideration on January 28, 2004. A.T. 12. Lopez filed a request for hearing, which was held before an administrative law judge ("ALJ") on July 19, 2006. A.T. 29, 285. The ALJ rendered an unfavorable decision on October 17, 2006, finding Lopez not "disabled" within the meaning of the Social Security Act ("the Act").

A.T. 9, 19. On December 8, 2006, Lopez requested review by the Appeals Council. A.T. 8. The Appeals Council denied the request for review on March 16, 2007, and concluded that the ALJ's decision was final. A.T. 4.

Lopez filed the instant complaint for judicial review of the ALJ's decision on May 18, 2007. On November 6, 2007, Lopez filed a motion for summary judgment and an alternative motion for remand. The Commissioner filed a cross-motion for summary judgment in opposition to Lopez's motion on November 13, 2007. Lopez filed a reply brief on December 13, 2007.

**II.     Factual History**

At the time of the ALJ's hearing, Lopez was a 63 years-old. A.T. 289. She had attended high school through the tenth grade and had also completed four years of college. A.T. 72. She also received training in accounting in December 1999. A.T. 72. She has past relevant work as a collateral analyst, accounts receivable collector, accounts receivable specialist and credit specialist. A.T. 57. At the hearing, a vocational expert characterized the skill level for "most of her work history" as skilled work with sedentary physical demands. A.T. 309. Lopez has not performed any work since December 2001. See A.T. 57, 290.

Prior to filing her application for benefits, Lopez was diagnosed with carpal tunnel syndrome. A.T. 135, 145, 201, 278. In addition, she was also diagnosed with depression and anxiety. A.T. 149, 180. She claims she cannot perform her past work because of her carpal tunnel syndrome, rheumatoid arthritis, osteoporosis, hypertension and high cholesterol. A.T. 290.

**STATUTORY AND REGULATORY FRAMEWORK**

The Social Security Act ("Act") provides for the payment of disability insurance benefits to people who have contributed to the Social Security system and who suffer from a physical or mental disability. See 42 U.S.C. § 423 (a)(1). To evaluate whether a claimant is disabled within the meaning of the Act, the ALJ is required to use a five-step analysis. 20 C.F.R. § 404.1520. The ALJ may terminate the analysis at any stage where a decision can

2

be made that the claimant is or is not disabled.  See Pitzer v. Sullivan, 908 F.2d 502, 504 (9th Cir. 1990).

At Step One, the ALJ determines if the claimant is engaged in any "substantial gainful activity," which would automatically preclude the claimant from receiving disability benefits.  See 20 C.F.R. § 404.1520(a)(4)(i).  If not, at the second step, the ALJ must consider whether the claimant suffers from a severe impairment which "significantly limits [the claimant's] physical or mental ability to do basic work activities."  See 20 C.F.R. § 404.1520(a)(4)(ii).  The third step requires the ALJ to compare the claimant's impairment to a Listing of Impairments in the regulations.  If the claimant's impairment or combination of impairments meets or equals the severity of any medical condition contained in the Listing, the claimant is presumed disabled and is awarded benefits.  See 20 C.F.R. § 404.1520(a)(4)(ii).

If the claimant's condition does not meet or equal the Listing, the ALJ must proceed to the fourth step to consider whether the claimant has sufficient "residual functional capacity" ("RFC") to perform her past work despite the limitations caused by the impairment(s).  See 20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant cannot perform her past work, the Commissioner is required to show, at Step Five, that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's "residual functional capacity, age, education, and past work experience."  See 20 C.F.R. § 404.1520(a)(4)(v).

Overall, in Steps One through Four, the claimant has the burden to demonstrate a severe impairment and an inability to engage in her previous occupation.  Andrews v. Shahala, 53 F.3d 1035, 1040 (9th Cir. 1995).  If the analysis proceeds to Step Five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work.  Id.

## ALJ'S FINDINGS

After performing the requisite sequential analysis in this case, the ALJ determined that Lopez was not "disabled" within the meaning of the Act.  A.T. 19.  The ALJ assessed

Step One in favor of Lopez, determining that she had not performed substantial gainful activity since February 25, 2002.  A.T. 14.

At Step Two, the ALJ evaluated the severity of Lopez's impairments and concluded that the medical evidence established that her carpal tunnel syndrome constituted a "severe impairment." A.T. 14.  In addition to the carpal tunnel syndrome, the ALJ acknowledged that Lopez had been diagnosed with medically determinable impairments of depression and anxiety, osteoporosis, hypertension, hyperlipidemia and abnormal x-ray findings of the neck.  Id.  Nonetheless, the ALJ determined that Lopez's carpal tunnel syndrome was the only severe impairment because there was no indication that the other impairments were expected to last more than twelve months and result in more than a slight functional limitation.  A.T. 15.

With respect to Lopez's alleged mental impairments, the ALJ performed the special analysis described in 20 C.F.R. § 404.1520a[1] in assessing the degree of functional limitation resulting from such impairments.  A.T. 15.  The ALJ found that Lopez's mental impairments were not severe because a consultative examination by a psychiatrist determined that her impairments caused the following degree of functional limitation:  mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.  Id.  The ALJ concluded that such a level of functional limitation is not severe because the limitation "does not satisfy the 'B' or 'C' criteria of the Listings." Id.

At Step Three, the ALJ determined that Lopez did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in

---

[1] That regulation provides in pertinent part:

when we evaluate the severity of mental impairments for adults (persons age 18 and over) and in persons under age 18 when Part A of the Listing of Impairments is used, we must follow a special technique at each level in the administrative review process. We describe this special technique in paragraphs (b) through (e) of this section.

20 C.F.R.  § 404.1520a(a).

4

Appendix One to Subpart P of 20 C.F.R. Part 404. A.T. 15-16.

At Step Four, the ALJ considered conflicting evidence in ascertaining Lopez's RFC. Specifically, he considered the findings and observations of various medical professionals and Lopez's statements regarding the nature of her symptoms and the extent of her physical limitations. After examining the record, the ALJ found that Lopez's impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. A.T. 16. The ALJ gave several reasons for making this determination. First, he noted that physical examinations consistently indicated Lopez's ability to use her hands and arms was not impaired. A.T. 18. Second, although she was diagnosed with carpal tunnel syndrome, the ALJ noted that the record did not contain a nerve conduction study even though Lopez reported one was performed in September 2003. Id. Third, the ALJ further noted Lopez received conservative treatment regarding her symptoms for carpal tunnel syndrome. Id. Fourth, although Lopez alleged she had rheumatoid arthritis, the ALJ found that was not the case. Id. Fifth, although Lopez alleged severe pain, the ALJ noted she was not prescribed severe pain medication. Id. Sixth and finally, the ALJ noted that the record contained pages of legible, handwritten correspondence from Lopez even though she alleged severe limitations due to carpal tunnel syndrome. Id. Accordingly, for all these reasons, the ALJ found Lopez's testimony not entirely credible.

The ALJ also evaluated the findings of Lopez's treating and non-treating doctors before concluding that the extent of her physical limitations and the severity of the pain she alleged were not supported by corroborative, objective evidence in the record. Regarding her treating doctors, the ALJ examined the findings of Dr. Santamaria, Dr. Mah, Dr. Schwartz, and Dr. Larsen. He noted that Dr. Santamaria found Lopez had carpal tunnel syndrome but could return to light duty work. A.T. 17. He noted that Dr. Mah diagnosed Lopez with carpal tunnel syndrome and opined that Lopez could sit and stand for no more than thirty minutes at a time, lift and carry no more than ten pounds, and use her fingers for fine manipulations not more than 5% of the time in an eight hour work day and her arms for

reaching not more than 66% of the time in an eight hour work day. A.T. 17, 18. He noted that Dr. Schwartz found no evidence of rheumatoid arthritis, but that he did find she had some elements of chronic pain, tender points and a somewhat depressed demeanor. A.T. 17. Finally, he noted that Dr. Larsen diagnosed Lopez with bilateral carpal tunnel syndrome secondary to overuse injury, stress, hypertension and cervical and lumbar tension secondary to stress. Id.

Regarding Lopez's non-treating physicians, the ALJ examined the findings of Dr. Moskowitz and Dr. Sedgh, her consultative examiners. He noted that Dr. Moskowitz found the range of motion in Lopez's spine was normal, her fine finger movements were intact, and that she had no extremity motor, sensory or reflex deficits. A.T 16, 17. He also noted that Dr. Sedgh found that Lopez's upper and lower extremities were normal, including elbows, wrists, and hands, her strength was 5/5[2] in all extremities, and that she had no functional limitations with sitting, standing, walking, lifting or carrying. A.T. 17.

The ALJ relied heavily on consulting and examining doctors, Dr. Moskowitz and Dr. Sedgh, noting that their opinions should be afforded more weight because they had the opportunity to examine Lopez, and also because their opinions were consistent with the record evidence. A.T. 18. The ALJ also gave more weight to Dr. Santamaria's findings, because she had the opportunity to treat Lopez, and Dr. Schwartz's findings, because she had the opportunity to examine Lopez. Id. The ALJ gave less weight to the findings of Dr. Larsen, reasoning that his opinion regarding Lopez's stress was not supported by the record. Id. The ALJ also afforded less weight to the findings of treating physician Dr. Mah, reasoning that her opinion regarding Lopez's physical limitations was not supported by objective evidence or clinical findings. Id.

Based on the foregoing, the ALJ found that Lopez possessed an RFC to "perform the exertional demands of light work, or work which requires a maximum lifting of twenty pounds and frequent lifting of ten pounds." A.T. 16. He also found that Lopez "is able to

---

[2] Strength is graded on a scale of zero to five, with zero showing no visible muscle contraction, and five showing normal strength. See Merck & Co., The Merck Manual of Diagnosis and Therapy 1751 (18th ed. 2006).

6

stand and/or walk for six hours in an eight hour workday and sit for six hours in an eight hour workday with normal breaks." Id. Because of Lopez's subjective symptoms, the ALJ found that she is "able to perform gross manipulation on an occasional basis."[3] Id.

The ALJ ultimately found that Lopez was capable of performing her past work as a collateral analyst, accounts receivable collector/specialist and credit specialist. A.T. 18-19. In support, the ALJ solicited the testimony of a vocational expert ("VE"), Malcolm Brodzinsky ("Brodinsky"), who testified that Lopez's past relevant work could be performed given her RFC for "light work." A.T. 19. Brodzinsky also testified that Lopez was able to return to her past relevant work, despite her limitation with gross manipulation. Id. Because the ALJ concluded that Lopez's RFC did not preclude her from performing her past relevant work, he declined to proceed to Step Five of the sequential analysis.

## DISCUSSION

### I.   Standard of Review

An ALJ's decision denying disability benefits can be set aside only if "the ALJ's findings are based on legal error or are not supported by substantial evidence." Tackett v. Apfel, 180 F. 3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). It means "more than a scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but "less than a preponderance." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). The court is required to review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). The ALJ is responsible for determining credibility and resolving conflicts in evidence and testimony. Andrews, 53 F.3d at 1039. Where the evidence is susceptible to more than one rational interpretation, the court must uphold the

---

[3] "Occasional" is defined as "occurring from very little up to one-third of the time, or approximately two hours in an eight hour workday." A.T. 16.

ALJ's decision.  Magallanes, 881 F.2d at 750.

## II.    Issues

Lopez seeks summary judgment and a finding that she was disabled or, in the alternative, remand for additional administrative proceedings on whether she was disabled. Specifically, Lopez argues the ALJ erred by:

1. failing to consider her perceived non-severe impairments in combination with her severe impairment when the ALJ made his determination that she could perform relevant past work;

2. failing to engage in a Step Five analysis; and

3. finding her statements concerning the intensity, persistence and limiting effects of her symptoms not entirely credible.

## III.   Analysis

### A.     The ALJ Failed to Articulate Consideration of Lopez's Non-Severe Impairments at Step Four

Lopez argues that the ALJ erred when he failed to consider her non-severe mental impairments during his Step Four analysis.  This error, Lopez asserts, incorrectly led the ALJ to conclude that she was capable of performing her relevant past work.  In response, the Commissioner argues that the ALJ's RFC finding correctly omitted discussion of Lopez's mental impairments because they were not severe, and because Lopez did not point to any credible evidence that her depression constituted a severe impairment.

The duty to determine a claimant's RFC at Step Four is left to the ALJ.  20 C.F.R. § 416.927(e)(2); see also Vertigan v. Halter, 20 F.3d 1044, 1049 (9th Cir. 2001).  As a part of this duty, the ALJ is required to consider all impairments, both severe and non-severe, in arriving at an RFC assessment.  Celaya v. Halter, 332 F.3d 1177, 1181 (9th Cir. 2003). Social Security Ruling ("SSR") 96-8p states that an ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments.  In Celaya, the Ninth Circuit

relied on SSR 96-8p in holding that the ALJ must consider a claimants "non-severe" limitations when assessing her RFC. 332 F.3d at 1181. Such non-severe limitations may, when considered in combination with limitations or restrictions due to other impairments, be critical to the outcome of the claim. Id.

There is evidence in the record that suggests the ALJ may have considered Lopez's non-severe mental impairments at Step Four of his analysis. The record shows that at Step Four, the ALJ proffered a hypothetical to the VE that took into account Lopez's non-severe depression. Specifically, the ALJ asked the VE whether someone with a mild mental RFC for activities of daily living, mild for social function, mild for concentration, persistence, and pace, with no episodes of decompensation could perform Lopez's relevant past work. A.T. 310-11. Accordingly, given this hypothetical, the ALJ may have accorded some consideration to the limiting effects of Lopez's non-severe depression in his RFC determination.

However, the ALJ failed to *articulate* this consideration in his decision. At Step Four, the ALJ had a duty to set forth a detailed analysis of the reasoning that formed the basis of his conclusions. See SSR 98-6p (describing the extensive narrative discussion requirements of the ALJ). Accordingly, the ALJ was required to make specific findings on the record at each phase of the Step Four analysis. See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (finding error where "ALJ, although noting [claimant's] limitation in both his findings of fact and hypothetical to the vocational expert, failed to *explain* how this limitation related to his finding that [the claimant] could perform her past relevant work") (emphasis added).

In Pinto, the Ninth Circuit faulted the ALJ for the same type of error. Id. In that case, the Ninth Circuit was concerned with the ALJ's failure to explain how the claimant's illiteracy factored into his analysis regarding her ability to perform her past relevant work. Id. at 846. The Pinto court noted that although the ALJ likely considered the claimant's limitation in a hypothetical to the VE, the ALJ erred by failing to explain how this limitation related to his finding that the claimant could perform her relevant past work. Id. at 847.

The Ninth Circuit remanded the case because, among other reasons, the court found it difficult to review the ALJ's decision without a sufficient explanation for his reasoning. Id.

Like Pinto, in this case, the ALJ's decision does not properly explain his consideration, if any, of Lopez's non-severe mental impairment at Step Four. In fact, the ALJ fails to mention at all Lopez's mental impairment in his decision on the issue of her RFC. Moreover, he also fails to mention or discuss the effect of Lopez's non-severe impairments in combination with, and upon, her severe impairments. Accordingly, remand is necessary so that the ALJ may consider Lopez's non-severe mental impairments in his RFC assessment if he did not do so previously; or, if he did, so that he may articulate its impact on his ultimate RFC finding. See id.; see also Carmickle v. Comm'r, Soc. Sec. Admin., No. 05-36128, 2008 WL 2841163, at *7 (9th Cir. July 24, 2008).

**B.   The ALJ was not Required to Engage in a Step Five Analysis**

Although a VE is normally used at Step Five, as noted, in this case, the ALJ proffered several hypotheticals to the VE at Step Four to determine whether Lopez had sufficient RFC to perform her past relevant work. Upon review of Lopez's work history, the VE classified the physical exertion levels required of her prior jobs. A.T. 309. Notably, the VE stated that Lopez's work was classified as skilled with sedentary physical demands. Id. Subsequently, the ALJ asked the VE what jobs someone could perform if they had Lopez's age and education level with a limitation at the "light work" level with "occasional gross handling." Id. The VE stated that such an individual could perform Lopez's past work. A.T. 310. The ALJ then proceeded to include a further limitation of someone with a mild mental RFC for activities of daily living, mild for social function, mild for concentration, persistence, and pace, with no episodes of decompensation. A.T. 310-11. The VE replied that a person with such a limitation, "could not perform their work because it, it was all detailed work, and you had to be on all the time." A.T. 311.

Lopez asserts that the ALJ erred by failing to engage in a Step Five analysis. Lopez admits that she had the initial burden to prove a disability. However, she claims that she met this burden by proving she could not engage in her previous occupation. She argues

10

that the VE's testimony unequivocally demonstrates she could not return to her relevant past work. Thus, she claims the burden should have shifted to the Commissioner at Step Five.

In opposition, the Commissioner contends that the ALJ made a correct RFC determination for the reasons stated above. The Commissioner also contends that the ALJ was not required to adopt the VE's testimony at Step Four. He asserts that the VE's testimony was based on a hypothetical proffered by the ALJ that included Psychiatric Review Technic Form ("PRTF") factors.[4] The Commissioner argues that PRTF factors are used at Steps Two and Three of the process and may not simply be substituted for an RFC assessment at later steps. Thus, the Commissioner contends that the ALJ was not required to consider PRTF factors when he made an RFC finding at Step Four because PRTF factors were relevant only to his Steps Two and Three evaluations. Therefore, according to the Commissioner, the ALJ correctly omitted the PRTF factors from his RFC analysis, and he was not required to adopt the VE's testimony regarding the effects of a mild mental limitation.[5]

The Commissioner is correct that the ALJ's hypothetical to the VE included mental functional limitations derived from a PRTF report, including the fact that Lopez had been rated mild for activities of daily living, mild for social function, and mild for concentration, persistence, and pace, with no episodes of decompensation. A.T. 15. These limitations

---

[4] The PRTF is a special technique used to assess whether a mental impairment is severe (Step Two of the ALJ's evaluation) and meets or equals a listed impairment (Step Three of the ALJ's evaluation). The PRTF outlines four broad functional areas known as PRTF factors, or B criteria. See 20 C.F.R. § 404.1520a(c)(3). These factors include: (i) activities of daily living; (ii) social functioning; (iii) concentration, persistence or pace; and (iv) episodes of decompensation. Id.

[5] In support of his position, the Commissioner cites the Ninth Circuit's decision in Hoopai v. Astrue, 499 F.3d 1071 (9th Cir. 2007). He asserts that Hoopai stands for the proposition that the ALJ was not bound to conclude that Lopez's non-severe impairments resulted in significant limitations requiring presentation to a vocational expert. However, Hoopai is not directly on point. In Hoopai, the Ninth Circuit held that the ALJ's step two determination that an impairment was severe did not necessarily require that the ALJ seek the assistance of a VE at step five. Id. at 1076. Here, the ALJ used the assistance of a VE at step four as opposed to step two.

11

1  were derived from the "B criteria"[6] section in Lopez's PRTF report. A.T. 185.

2  SSR 96-8P provides that paragraphs B and C of the PRTF are "not an RFC
3  assessment," especially since the mental determinations used at Steps Four and Five
4  require "a more detailed assessment." SSR 96-8p. Rather, the limitations identified in the
5  PRTF are to be "used to rate the severity of mental impairments(s) at steps 2 and 3 of the
6  sequential evaluation process." Id. Thus, Lopez's argument that the VE testimony
7  precludes a finding that she can perform her relevant past work is incorrect. Here, the ALJ
8  was under no obligation to include, verbatim, findings from a PRTF in his ultimate
9  assessment of Lopez's RFC at Step Four because such limitations are relevant instead at
10 Steps Two and Three. Id.

11 Moreover, because the ALJ in this case concluded his sequential analysis at Step
12 Four, he owed no statutory duty to use VE testimony to determine whether Lopez could
13 perform other jobs in the national economy, an analysis which usually takes place at Step
14 Five. Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 2003). In Matthews, the Ninth Circuit
15 upheld an ALJ's decision rejecting the claimant's argument that the ALJ's hypothetical to
16 the VE , posed at Step Four of his analysis, was inadequate. Id. The court reasoned that
17 because the hypothetical took place at Step Four instead of Step Five, the burden of proof
18 had not yet shifted to the Commissioner. Id. Thus, the Matthews court noted that the VE's
19 testimony was "useful, but not required." Id.

20 Like Matthews, the ALJ in this case chose to use VE testimony at Step Four.
21 Because the burden never shifted to the Commissioner, the ALJ's decision to use VE
22 testimony at Step Four was optional and not statutorily prescribed. While as stated above,
23 the ALJ's decision did not properly reflect his consideration of Lopez's non-severe mental
24 impairments at Step Four, this does not mean that the burden shifted to the Commissioner.
25 On remand, as set forth above, the ALJ is required to revisit his determination at Step Four

---

[6] The "B" criteria are used to evaluate functional loss resulting from a mental impairment and contemplate restrictions in the following areas: (1) activities of daily living, (2) maintaining social functioning, (3) maintaining concentration, persistence, or pace, and (4) episodes of extended periods of decompensation. See 20 C.F.R. pt. 404, subpt. P, App. 1, 12.00, Mental Disorders.

12

regarding Lopez's RFC; however, the burden remains on Lopez to prove that she cannot engage in her past relevant work. On remand, if the ALJ finds that Lopez cannot perform her past relevant work based on his RFC finding at Step Four, it is only then that the ALJ will be required to proceed to Step Five and the burden will shift to the Commissioner; but not before such a point.

### C.  The ALJ did not Err in his Credibility Determination

Lopez argues that the ALJ erred in finding that her testimony regarding her symptoms was not entirely credible. In support, Lopez contends that the ALJ improperly relied on Dr. Moskowitz's and Dr. Sedgh's consultative evaluations while ignoring the findings of her treating physicians. Lopez asserts that the reliability of Dr. Moskowitz's report is open to serious doubt because his findings fail to acknowledge her carpal tunnel syndrome. Lopez also disputes Dr. Sedgh's report, in which he found that she was able to generate forty pounds of force on the right hand and thirty-five pounds of force on the left hand during his grip strength testing. She contends that Dr. Larsen, her treating physician, took more extensive readings and found that she could generate twenty to twenty-five pounds on the right and five to ten pounds on the left. Lopez also argues the ALJ ignored Dr. Larsen's positive Tinel's and Phalen's[7] sign findings regarding her hands.

Finally, Lopez faults the ALJ for failing to mention her "pristine" work history when assessing her credibility. Lopez urges the court to conclude that a claimant's pristine work history entitles their testimony about their work capabilities to a finding of substantial credibility.

In opposition, the Commissioner contends that the ALJ gave clear and convincing reasons for discounting Lopez's credibility. Preliminarily, the Commissioner argues that the ALJ did not totally disbelieve Lopez's subjective symptom complaints, but instead credited Lopez's complaints in his RFC assessment by finding that she could perform light work using only occasional gross manipulation.

---

[7] The presence of carpal tunnel syndrome is strongly suggested by positive Tinel's and Phalen's sign findings. See The Merck Manual, at 1751.

The Commissioner then argues that the ALJ gave several reasons for discounting Lopez's credibility concerning her disabling carpal tunnel symptoms, including (i) the conservative treatment she received, (ii) inconsistences between her statements and her daily activities, and (iii) inconsistences between her statements and the medical evidence. These reasons, the Commissioner asserts, are supported by substantial evidence.

Regarding Lopez's conservative treatment, the Commissioner contends that evidence of conservative treatment is sufficient to discount Lopez's testimony regarding the severity of her impairment. Regarding her daily activities, the Commissioner asserts that the ALJ properly discounted Lopez's complaints of pain, swelling, and numbness in her wrists and hands because she was able to legibly hand write pages of correspondence.

Turning to the medical evidence, the Commissioner points to several pieces of evidence the ALJ weighed before making a determination that Lopez's testimony was not credible. First, Lopez complained of rheumatoid arthritis, but the medical records indicate that she does not have rheumatoid arthritis. Second, when Dr. Moskowitz tested Lopez's grip strength, he observed that she elicited ten pounds on testing, but noted she made little effort during the test. Third, Dr. Moskowitz also noted that no other abnormalities were found after examination of Lopez's upper physical extremities. Fourth, Dr. Sedgh also conducted a grip strength test and found Lopez exhibited thirty-five to forty pounds of grip strength as well as normal upper extremity functioning.

The Commissioner also contends that the ALJ properly weighed each physician's opinion. The Commissioner argues that the one-time opinion of a consultative examiner, such as Dr. Moskowitz and Dr. Sedgh, may constitute substantial evidence in support of the ALJ's findings. Furthermore, the Commissioner argues that the ALJ was entitled to rely on Dr. Moskowitz's and Dr. Sedgh's findings. The Commissioner also argues that Dr. Larsen's findings are not inconsistent with the opinions of Dr. Moskowitz and Dr. Sedgh. He asserts that the ALJ agreed that the medical evidence warranted a finding that Lopez had severe carpal tunnel syndrome. However, other than the recommended wrist braces, Dr. Larsen did not impose any specific, functional work limitations as result of his findings.

Thus, the Commissioner concludes that Dr. Larsen's failure to impose any upper extremity work restrictions is actually consistent with Dr. Moskowitz's and Dr. Sedgh's findings.

In reply, Lopez argues that the Commissioner wrongly claims that Dr. Larsen failed to impose any upper extremity work restrictions. Lopez contends that Dr. Larsen's finding that she is temporarily totally disabled is absolutely a work restriction. Lopez also reiterates her argument that the ALJ's reliance on the consultative evaluation of Dr. Moskowitz is troubling. She argues that the Commissioner has cited no authority for the proposition that the opinion of a non-treating, non-specialist physician, whose report fails to mention the documented impairment, can provide substantial evidence to discount a claimant's credibility.

Accordingly, Lopez's challenge to the ALJ's findings regarding her credibility actually raises three issues. These include whether: (i) the ALJ gave inappropriate weight to her medical examiners; (ii) the ALJ properly accounted for Lopez's symptom testimony; and (iii) the ALJ failed to credit Lopez's "pristine" work history.

### 1. ALJ's Treatment of Doctors' Opinions

Lopez argues that the ALJ gave improper weight to the opinions of the examining physicians, Dr. Moskowitz and Dr. Sedgh, and improperly discounted those of her treating physician, Dr. Larsen.

As noted, the ALJ accorded the opinions of Dr. Moskowitz and Dr. Sedgh more weight than that of Dr. Larsen. Before making this determination, the ALJ provided a detailed summary of the findings of all three doctors. He noted that Dr. Moskowitz's physical examination revealed that Lopez's lumbar spine was non-tender and that the range of motion was normal. A.T. 16-17. The ALJ also noted that Dr. Moskowitz found that Lopez made very little effort during grip strength testing, a neurological exam revealed she was not tremulous, she was able to make a fist, perform fine finger approximation without difficulty, and there were no extremity motor, sensory or reflex deficits. A.T. 17. Dr. Moskowitz opined that her fine finger movement was intact bilaterally.

Regarding Dr. Sedgh, the ALJ noted that a muscoloskelatal examination of Lopez's

15

lumbar and cervical spine revealed no evidence of muscle spasms or tenderness and that she had a normal range of motion. The ALJ also noted that Dr. Sedgh found she was able to generate forty pounds of force on the right hand and thirty-five pounds on the left hand during grip strength testing, her upper and lower extremities were normal, including shoulders, elbows, wits and hands, and her neurological exam was normal. Dr. Sedgh opined that Lopez had no functional limitations with sitting, standing, walking, lifting or carrying.

Regarding Dr. Larsen, the ALJ noted that the record contained an orthopedic evaluation and a brief progress note. The ALJ also noted that Dr. Larsen diagnosed Lopez with carpal tunnel syndrome, secondary to overuse injury, stress, hypertension secondary to stress and cervical and lumbar muscle tension secondary to stress. The ALJ cited Dr. Larsen as stating Lopez's primary complaint was stress.

An ALJ need not necessarily give controlling weight to the opinion of a treating physician. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194-95 (9th Cir. 2004). "'Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.'" Baston, 359 F.3d at 1195 (citing Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)). If the record has conflicting medical evidence, the ALJ is responsible for determining credibility and ultimately resolving the conflict. Benton v. Barnhart, 331 F.3d 1030, 1038, 1040 (9th Cir. 2003). "The ALJ may reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician if the ALJ makes 'findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. In sum, the ALJ can reject the findings of a treating physician if "that opinion is brief, conclusory, and inadequately supported by clinical findings." Id.

16

Here, the ALJ gave less weight to Dr. Larsen, Lopez's treating physician, because he found his opinion to be conclusory and inadequately supported by clinical findings. The ALJ stated that Dr. Larsen's opinion that Lopez's primary problem was stress was not supported by the record. A.T. 17. The ALJ noted that there were no mental health treatment notes in the record that evinces his stress conclusion. Id. Moreover, he found that Dr. Moskowitz's and Dr. Sedgh's opinions were consistent with and supported by the record. Id. Physical examinations, the ALJ noted, consistently indicated that Lopez's ability to use her hands and arms were not impaired. Id. The ALJ gave a detailed summary of the facts, interpreted those facts and made detailed findings. As such, the court concludes that the ALJ afforded the proper weight to the opinions of Dr. Moskowitz, Dr. Sedgh, and Dr. Larsen.

### 2. ALJ's Treatment of Lopez's Symptom Testimony

Lopez also argues that the ALJ improperly discredited her symptom reporting. She claims that the record does not support the ALJ's partial discreditation of her pain testimony. The court finds that the ALJ provided a legally sufficient basis for discounting Lopez's symptom and pain reporting.

An ALJ cannot reject a claimant's subjective reports of her symptoms solely because they are not corroborated fully by medical evidence. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc)). Pain testimony can reveal limitations that are not demonstrated by objective medical evidence. Id. However, in assessing the credibility of a claimant, the ALJ can consider a "claimant's reputation for truthfulness and inconsistencies in a claimant's testimony." Id. (citing Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001).

SSR 96-7p also indicates additional factors that an ALJ should consider when assessing a claimant's credibility. Specifically, SSR 96-7p requires the ALJ to consider (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's symptoms/pain, (3) factors that could aggravate the symptoms, (4) the effects of medication, (5) treatment other than medication, (6) any measures the claimant has taken

17

other than treatment, and (7) any other factors concerning the claimant's functional limitations and restrictions. The ALJ's reasons for rejecting pain testimony must be clear and convincing. Burch, 400 F.3d at 680. The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints. Id.

Here, the ALJ articulated adequate reasons for discounting Lopez's symptom and pain testimony. The ALJ considered and evaluated the medical findings of Dr. Larsen, Dr. Schwartz, Dr. Santamaria, Dr. Mah, Dr. Paculdo, Dr. Moskowitz and Dr. Sedgh. In addition, the ALJ considered Lopez's functional restrictions, her use of medication, and certain daily activities. Furthermore, the ALJ articulated numerous other reasons why he concluded that Lopez's statements and record evidence did not sufficiently demonstrate her alleged debilitating pain, as discussed previously. See Order at 5.

For these reasons, the ALJ's partial rejection of Lopez credibility was proper. He provided specific, clear, and convincing reasons, supported by the record, that her symptom and pain reporting were not entirely credible. See id. at 681.

### 3. ALJ's Treatment of Lopez's Work History

Finally, Lopez faults the ALJ for failing to credit her "pristine" work history when he determined that her pain and symptom reporting was not entirely credible. The Ninth Circuit has held that an ALJ may consider a claimant's work record as a factor in weighing a claimant's credibility. See Thomas, 278 F.3d at 959. However, Lopez has not cited a case from this jurisdiction, nor does there appear to be one, that requires the ALJ to consider this factor, or that precludes an adverse credibility finding even if this factor is present. Furthermore, Lopez provides no authority for the proposition that an ALJ must discuss every possible factor having some bearing on the question before making a credibility finding.

In this case, as stated above, the ALJ provided specific, clear and convincing reasons, supported by the record, that Lopez's symptom and pain reporting were not entirely credible. According to the standard articulated by the Ninth Circuit in Burch, the ALJ made a proper credibility finding. 400 F.3d at 680.

18

## CONCLUSION

Accordingly, the court GRANTS IN PART and DENIES IN PART Lopez's motion for summary judgment, and also GRANTS IN PART and DENIES IN PART the Commissioner's motion.

The court finds the ALJ's decision to have been substantially correct. However, for the reasons set forth above, the court remands to the ALJ to clarify the impact of Lopez's non-severe impairments on his RFC determination at Step Four. In all other respects, the Commissioner's motion is granted and Lopez's motion is denied.

This order fully adjudicates the motions listed at numbers twelve and thirteen of the clerk's docket for this case. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: August 12, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge